UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
------------------------------------------------------------X
POLARGRID LLC,                                :

                    Plaintiff,                :        Case No.: 1:05MS00219

         - against -                          :        Underlying action:
                                              :          04-CV-09578 (TPG) (S.D.N.Y.)
                                              :
VIDESH SANCHAR NIGAM LIMITED,                 :
                                              :
                    Defendant.                :
------------------------------------------------------------X
THE SCOWCROFT GROUP,                          :
                                              :
                    Subpoenaed Nonparty.      :
------------------------------------------------------------X

---

## MEMORANDUM OF LAW IN OPPOSITION TO THE SCOWCROFT GROUP'S MOTION TO QUASH A SUBPOENA, PURSUANT TO FED. R. CIV. P. 45(c)(3)(A), AND IN SUPPORT OF POLARGRID'S REQUEST THAT SCOWCROFT FULLY COMPY WITH THE SUPBOENA, PURSUANT TO FED. R. CIV. P. 45(c)(2)(B) and 45(d)(2)

---

BUCHANAN INGERSOLL PC
John H. Korns, Esq. (D.C. Bar No. 142745)
1776 K Street, N.W.
Suite 800
Washington, D.C. 20006-2365
Telephone: (202) 452-7939
Facsimile: (202) 452-7989

Attorneys for Plaintiff
Polargrid LLC

Of Counsel:
Mark S. Baldwin, Esq. (not a member of the D.C. Bar)
Peter D. Adelman, Esq. (not a member of the D.C. Bar)
Brown Rudnick Berlack Israels LLP
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

## TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 3

    A.    Background Information ................................................................................. 3

    B.    The New York Action ..................................................................................... 5

ARGUMENT ..................................................................................................................... 6

POINT I    THIS COURT SHOULD DENY SCOWCROFT'S MOTION
TO QUASH THE SUBPOENA AS A SHORT DEPOSITION
SEEKING INFORMATION ESSENTIAL TO PLARGRID'S
CLAIMS WILL  NOT UNDULY BURDEN SCOWCROFT .................................. 6

    A.    Discovery Standard Under The Federal Rules Of Civil Procedure ........................... 6

    B.    The Information Sought In The Subpoena Is Relevant
To Polargrid's Claims In The New York Action As Is
It Is Essential to Proving VSNL's Breach Of The MOU ......................................... 7

    C.    Scowcroft's Testimony Is Unique That The Requested
Information Cannot Be Obtained From Other Sources ............................................ 10

    D.    Polargrid Is Willing To Work With Scowcroft To Schedule
A Convenient Time And Place To Conduct The Deposition ..................................... 11

E.    Scowcroft's Claims Of Privilege And Confidentiality Are
Unsupportable......................................................................................... 13

F.    Scowcroft Has Failed To Make The Requisite Showing
For This Court To Grant A Stay Of Scowcroft's Deposition.................................... 14

POINT II    SINCE THE DISCOVERY REQUESTED FROM SCOWCROFT
IS CRUCIAL TO THE UNDERLYING LITIGATION, THIS
COURT SHOULD COMPEL SCOWCROFT'S PRODUCTION
OF THE REQUESTED DOCUMENTS AND ITS APPERANCE AT A
DEPOSITION......................................................................................... 16

A.    Scowcroft Has Waived It's Rights to Assert Any Claim Of
Privilege By Failing To Comply With The Requirements
Set Forth In The Federal Rules ................................................................. 16

B.    Production Of The Documents Requested In The Subpoena
Will Not Unduly Burden Scowcroft ......................................................... 17

CONCLUSION.................................................................................................... 19

## TABLE OF AUTHORITIES

**CASES**                                                                                                      **PAGES**

*Alexander v. FBI*, 186 F.R.D. 60 (D.D.C. 1998) ...................................................................7, 10

*Alexander v. FBI*, 186 F.R.D. 21 (D.C. Cir. 1998) ...........................................................16

*Amicus Communications, L.P. v. Hewlett-Packard Co.*, No. 99-0284,
1999 WL 33117227 (D.D.C. Dec. 3,1999).........................................................................13, 14

*Bada Co. v. Montgomery Ward & Co.*, 32 F.R.D. 208 (S.D. Cal. 1963) ...............................11

*Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318 (D.D.C. 1966),
*aff'd, V.E.B. Carl Zeiss, Jena v. Clark*, 384 F.2d 979 (D.C. Cir. 1967)...............................11

*CBS, Inc. v. Ahern*, 102 F.R.D. 820 (S.D.N.Y. 1984) ..........................................................10

*Cofield v. City of LaGrange, Georgia*, 913 F. Supp. 608 (D.D.C.1996).................................7

*E.E.O.C. v. C&P Telephone Co.*, 813 F. Supp. 874 (D.D.C. 1993) .....................................13

*In re Exxon Valdez*, 142 F.R.D. 380 (D.D.C. 1992).........................................................18, 19

*F.T.C. v. Dresser Indus., Inc.*, Misc. No. 77-44,
1977 WL 1394 (D.D.C. April 26, 1997)................................................................................13

*Federal Open Mkt. Comm. Of Fed. Reserve Sys. v. Merrill*,
443 U.S. 340 (1979) ..............................................................................................................13

*GFL Advantage Fund, Ltd. v. Colkitt*,
216 F.R.D. 189 (D.D.C. 2003) ...................................................................14, 15, 16, 17

*Hickman v. Taylor*, 329 U.S. 495 (1947)................................................................................6

*Hill v. Dillard's Inc.*, No. 00-2523, 2001 WL 1718367 (D.Kan. Oct. 9, 2001) ................................ 13

*Krieger v. Fadely*, 199 F.R.D. 10 (D.D.C. 2001) ................................................................ 9

*Linder v. Calero-Portocarrero*, 180 F.R.D. 168 (D.D.C. 1998) .................................... 7

*Overly v. Hall-Neal Furnace Co.*, 12 F.R.D. 112 (N.D. Ohio 1951) ................................ 11

*In re Providian Fin. Corp. Sec. Litig.*, 222 F.R.D. 22 (D.C.C. 2004) ............................. 6

*Rimsat, Ltd. v. Hillard, Jr.*, 207 B.R. 964 ( Bankr. D.C. Cir. 1997) ............................. 7

*Smith v. Schlesinger*, 513 F.2d 462 (D.C. Cir. 1975) .................................................. 9

*United States ex. rel Fisher v. Network Software
Assocs.*, 217 F.R.D. 240 (D.D.C. 2003) ...................................................................... 18

*Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449 (D.D.C. 2002)...................... 6, 11, 12

## Rules and Statutes

Fed. R. Civ. P. 26(b)(1) ............................................................................................. 6, 8

Fed. R. Civ. P. 45.......................................................................................................... 6

Fed. R. Civ. P. 45(c)(2)(B) ........................................................................................... 1

Fed. R. Civ. P. 45(c)(3)(A) ........................................................................................ 1, 7

Fed. R. Civ. P. 45(d)(2) ..................................................................................... 1, 9, 16, 17

Fed. R. Evid. 801(d)(2)................................................................................................. 9

50 App. U.S.C. 2170(c) ................................................................................................ 14

**Other Authorities**

Charles A. Wright, Arthur R. Miller & Richard L. Marcus,
Federal Practice and Procedure: Civil 2d § 2008  (1994) .............................................. 7

# PRELIMINARY STATEMENT[1]

Defendant Polargrid LLC ("Polargrid"), by its attorneys, Buchanan Ingersoll PC, respectfully submits this memorandum of law: (i) in opposition to the motion brought by The Scowcroft Group ("Scowcroft"), seeking an order, pursuant to Federal Rule of Civil Procedure 45(c)(3)(A), quashing a Subpoena in a Civil Case issued by Polargrid and dated May 10, 2005 (the "Subpoena"), to the extent the Subpoena requires a representative of Scowcroft appear for a deposition; and (ii) in support of Polargrid's request that, pursuant to Federal Rules of Civil Procedure 45(c)(2)(B) and 45(d)(2), Scowcroft to fully comply with the Subpoena by (a) appearing for a deposition to testify as to the matters set forth in Exhibit A thereof, and (b) producing the documents requested in Exhibit B thereof.

Scowcroft's motion to quash the Subpoena should be denied in its entirety as Scowcroft has not demonstrated (and cannot demonstrate) that it will be unduly burdened by appearing for a short deposition for which Scowcroft admits its preparation for and appearance at will probably last one day.[2] (Scowcroft Mem., Ex. 2, ¶ 5). Moreover, the information sought from Scowcroft is plainly relevant to Polargrid's claims asserted against defendant Videsh Sanchar Nigam Limited ("VSNL") in the underlying litigation, entitled *Polargrid LLC v. Videsh Sanchar Nigam Limited*, Docket No. 04-09578 (TPG) (S.D.N.Y.) (the "New York Action"), as Scowcroft's testimony regarding its business relationship with VSNL, and any communications made in connection therewith, could demonstrate that VSNL had no intention of honoring its contractual obligations to Polargrid (the breach of which agreement serves as the basis of Polargrid's claims in the New York Action).

---

1      References to exhibits annexed to: (i) the Declaration of Mark S. Baldwin, dated June 23, 2005, shall be as follows: ("Baldwin Decl., Ex. __, ¶ __"); and (ii) Scowcroft's Motion to Quash a Non-Party Subpoena, dated June 10, 2005, shall be as follows: ("Scowcroft Mem., at __" or "Scowcroft Mem., Ex. __, ¶ __").

2      Scowcroft's Motion to Quash only seeks to quash the Subpoena to the extent that it requests a Scowcroft representative appear for a deposition and does not seek to quash the portion of the Subpoena which seeks the production of documents from Scowcroft.

Additionally, the crux of the information requested from Scowcroft cannot be obtained from VSNL, as: (i) upon information and belief, VSNL was not privy to, and is not aware of, all relevant communications between Scowcroft and other non-parties which also played a part in the VSNL/Scowcroft relationship and whose actions also relate to the underlying breach; and (ii) Scowcroft has admitted that VSNL is not in possession of all of the responsive information. (Scowcroft Mem., at 5; *Id.* Ex. 2, ¶ 5). Indeed, even assuming, *arguendo*, that all of the requested information could be obtained from VSNL (which it cannot), VSNL has thwarted Polargrid's attempts to obtain any of this information by failing to produce documents related to Scowcroft and/or CFIUS approval. (Baldwin Decl., ¶ 6). Moreover, because the information relayed during the Scowcroft deposition may result in Polargrid's need for additional discovery from VSNL or other non-parties, it is not practical to stay the Subpoena pending the completion of discovery in the New York Action. Further, Scowcroft's inability to make a clear showing that it will suffer any hardship if the Subpoena is not stayed mandates a denial of its request.

Based upon the same reasoning, production of the documents requested in Exhibit B of the Subpoena cannot be found to be unduly burdensome upon Scowcroft. Additionally, Scowcroft has waived any claim of privilege with respect to these documents as its written objection failed to comply with the requirements set forth in the Federal Rules of Civil Procedure.

As such, this Court should deny Scowcroft's motion to quash and enforce Scowcroft's compliance with the terms of the Subpoena.

## STATEMENT OF FACTS

**A.**     **Background Information**[3]

In or about 2002, Polarnet, an affiliate of Polargrid, fully developed a plan to construct an international fiber optic cable system which would traverse the Artic Ocean and offer connectivity to Europe, Asia and the United States.   After securing essential permits from the Russian and Norwegian governments and engaging in extensive negotiations with Tyco Telecommunications (US), Inc. ("TycoTel"), Polarnet prepared to enter into an agreement with TycoTel (the "Polarnet Contract"), under which TycoTel would plan and construct the international fiber optic cable system at a cost of approximately $800 million.

In order to provide the connectivity essential to its business plan, Polarnet requires access to presently unused capacity on an existing global network of undersea and terrestrial fiber optic cable, in addition to certain usage rights (collectively, "TGN"), which are owned by Tyco International, Ltd. ("Tyco"), an affiliate of TycoTel.  Access to the TGN assets was essential to Polarnet, as there are no other assets available on the market to provide the connectivity that is essential to the Polarnet business plan.

In late 2003, Tyco announced its intention to sell TGN.  Due to the vital importance of TGN to Polarnet's business plan, Polarnet commenced efforts to participate in the auction process, with the ultimate goal of acquiring TGN.  This included the formation of Polargrid to acquire TGN. While pursuing its acquisition strategy, Polargrid met with VSNL, a competitor which had also expressed an interest in purchasing TGN.  VSNL ultimately induced Polargrid to abandon its own

---

3     For a more detailed summary of the background facts, Polargrid respectfully refers this Court to the Compliant filed in connection with the New York Action.  (Scowcroft Mem., Ex. 1).

efforts to acquire TGN and support VSNL's efforts to acquire TGN, in exchange for VSNL providing the bandwidth and financing that were essential to the successful pursuit of Polarnet's business plan.

On June 28, 2004, this agreement between VSNL and Polargrid was put into a written Memorandum of Understanding (the "MOU"), which was executed by the parties and binding thereon. In accordance with the terms of the MOU, and at VSNL's direction, on June 28, 2004, Polargrid advised TycoTel of its agreement with VSNL and that it would enter the Polarnet Contract *only if* VSNL was selected as the winning bidder for TGN. Through a separate, contemporaneous letter to Goldman Sachs (the investment banking firm retained by Tyco to conduct the auction for the sale of TGN), Polargrid formally withdrew from the bidding and assisted VSNL in its efforts to acquire TGN.

Upon information and belief, before VSNL and Polargrid executed the MOU, VSNL retained Scowcroft, a self-described international business advisory firm[4] to assist in securing the approvals from the Committee on Foreign Investments in the United States ("CFIUS") which were necessary to consummate VSNL's agreement with Tyco. Simply put, since VSNL is a corporation organized under the laws of India and VSNL is owned by foreign investors and the Indian government, VSNL's acquisition of Tyco (a United States corporation) had to be reviewed and approved by CFIUS prior to the completion of the acquisition. Since obtaining CFIUS approval is a difficult process wherein foreign entities often must agree to significant restrictions in order to satisfy United States national security interests, VSNL apparently hired Scowcroft to assist with this process.

---

4    A more detailed explanation of Scowcroft's business practices can be found at their official website: http://www.scowcroft.com.

Moreover, Polargrid and Polarnet are owned by foreign entities. Thus, it is likely that VSNL would have needed to disclose its relationship with Polargrid as part of the CFIUS process.

On October 27, 2004 (well after VSNL retained Scowcroft to assist in its attempt to acquire Tyco's fiber-optic assets), VSNL sent an e-mail to Polargrid (the "October 27 E-mail") wherein VSNL breached its obligations under the MOU by advising that it would neither invest $35 million in the Polarnet project, nor provide the bandwidth necessary to complete Polargrid's and Polarnet's business plan. (Baldwin Decl., Ex. A). Immediately thereafter, on November 1, 2004, VSNL and Tyco announced that VSNL had won the bid for TGN at an auction price of $130 million (which was far below the minimum of $150 million that VSNL and Polargrid had agreed would be required).

## B.    The New York Action

As a result of VSNL's breach of the MOU, Polargrid commenced the New York Action seeking, *inter alia*, VSNL's specific performance under the MOU or, in the alternative, enjoining VSNL from consummating an acquisition of TGN and awarding monetary damages to Polargrid. (Scowcroft Mem., Ex. 1).

In accordance with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the Southern District of New York, on April 1, 2005, Polargrid served VSNL with a First Request for Production of Documents  ("Polargrid's Document Request"). (Baldwin Decl., Ex. B).  To date, VSNL has failed to produce the requested documents related to its relationship with Scowcroft or the CFIUS process.  (Baldwin Decl., ¶ 6).

Thereinafter, on or about May 10, 2005, Polargrid served the Subpoena upon Scowcroft. (Scowcroft Mem., Ex. 3).  By letter dated June 7, 2005 (the "June 7 Letter") Scowcroft, through its

counsel, objected to the inspection and copying of the documents requested by Polargrid as set forth in Exhibit B of the Subpoena. (Baldwin Decl., Ex. C).

In accordance with the Local Rules of this Court, the parties conferred and attempted to resolve Scowcroft's objection, but were unable to reach a resolution. As such, the within motion practice followed.

## ARGUMENT

### POINT I

**THIS COURT SHOULD DENY SCOWCROFT'S MOTION
TO QUASH THE SUBPOENA AS A SHORT DEPOSITION
SEEKING INFORMATION ESSENTIAL TO POLARGRID'S
CLAIMS WILL NOT UNDULY BURDEN SCOWCROFT**

**A.    Discovery Standard Under The Federal Rules Of Civil Procedure**

The Federal Rules of Civil Procedure allow a party to request discovery relating to any matter which is not privileged, is relevant to any party's claims or defenses, and, even if not admissible at trial, "appears calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 45 (permitting discovery from non-parties). Courts have routinely construed these rules in the broadest sense possible to "ensure that the action proceeds with 'the fullest possible knowledge of the issues and facts before trial.'" *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 452 (D.D.C. 2002) (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)); *see also In re Providian Fin. Corp. Sec. Litig.*, 222 F.R.D. 22, 25 (D.C.C. 2004) ("Under the Federal Rules, discovery is broad").

In keeping with this liberal interpretation of the Federal Rules, this Court has taken the position that the "quashing of a [non-party] subpoena and the complete prohibition of a deposition

are *certainly extraordinary measures which should be resorted to only in rare occasions."* *Alexander v. FBI*, 186 F.R.D. 60, 64 (D.D.C. 1998) (emphasis supplied). As such, in order to quash a subpoena, the moving party bears the difficult burden of proving that the subpoena is unduly burdensome. Fed. R. Civ. P. 45(c)(3)(A)(iv); *see also Alexander, supra* ("The moving party has a heavy burden of showing extraordinary circumstances based on specific facts that would justify [an order quashing a subpoena]") (internal quotations marks and citations omitted); *In re RIMSAT, Ltd. v. Hillard, Jr.*, 207 B.R. 964, 969 (Bankr. D.D.C. 1997) ("Mere assertions that compliance would be burdensome are insufficient to satisfy such a burden"). In determining whether a subpoena meets this high standard, courts weigh a variety of factors such as: (i) relevance; (ii) the requesting party's need for the documents; (iii) whether the request is cumulative and duplicative; (iv) the time and expense required to comply with the subpoena relative to the responder's resources; and (v) the importance of the issues at stake in the litigation. *Linder v. Calero-Portocarrero*, 180 F.R.D. 168, 174 (D.D.C. 1998). Applying these factors to the situation here, it is clear that Scowcroft has failed to demonstrate that the Subpoena is unduly burdensome.

**B.    The Information Sought In The Subpoena Is Relevant
        To Polargrid's Claims In The New York Action As It
        Is Essential To Proving VSNL's Breach Of The MOU**

It is well-settled law that the threshold to establish the relevancy of subpoenaed information is *"not high,"* as the information sought *"need not even be admissible at trial"* as long as it is reasonably calculated to lead to admissible evidence. *Cofield v. City of LaGrange, Georgia*, 913 F. Supp. 608, 614 (D.D.C.1996) (emphasis supplied) (citing Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure: Civil 2d § 2008, at 101 & n. 7 (1994) ("The proposition stated in the text is now so well settled that the cases cited are only illustrative of so

- 7 -

many others")); *see also* Fed. R. Civ. P. 26(b)(1). Applying this liberal standard to the information requested in Exhibit A of the Subpoena, it is clear that, contrary to the hollow allegations of Scowcroft, the testimony Polargrid seeks to elicit from Scowcroft meets this standard as it is necessary to establish Polargrid's claims alleged in connection with the New York Action.[5]

Polargrid's claims alleged against VSNL in the New York Action are based upon VSNL's breach of the MOU and its failure to honor its obligations to provide Polargrid with the requisite TGN bandwidth and funding necessary to finalize Polargrid's and Polarnet's business plan. As more fully set forth above, in order to acquire the assets of Tyco (and obtain the bandwidth promised to Polargrid), VSNL needed CFIUS approval. To assist in overcoming this obstacle and, by virtue of Scowcroft's own admissions, VSNL retained Scowcroft to "provide consulting services in connection with VSNL's attempt to acquire Tyco's fiber-optic assets," which services included "advice regarding VSNL's effort to obtain approval of the acquisition from [CFIUS]." (Scowcroft Mem., at 2; *Id.*, Ex. 2, ¶ 3). Surely any such relationship would have included a discussion (and, perhaps, the exchange of documents) relating to Polargrid and the MOU since Polargrid is owned by foreign entities.

The information exchanged between Scowcroft, VSNL and CFUIS are essential to establish Polargrid's claim that VSNL breached the MOU. For example, since Polargrid receives substantial funding from Russian investors, if VSNL intended to comply with the MOU, it should have advised Scowcroft (and CFIUS) of Polargrid's foreign interests as it is relevant (and necessary) to the CFIUS process. Moreover, as Polargrid entered into the MOU with VSNL in June 2004 and VSNL breached the MOU on October 28, 2004, testimony from a Scowcroft representative indicating that

---

5    The relevance of the documents requested in Exhibit B of the Subpoena is set forth in Point II (B) below.

VSNL retained Scowcroft's services prior to October 28, 2004 could demonstrate that VSNL either: (i) intentionally deceived the United States government as to the foreign entities involved in the proposed acquisition of Tyco's fiber-optic assets; or (ii) never intended to honor its contractual obligations to Polargrid under the MOU. As such, Polargrid has a legitimate interest in deposing a Scowcroft representative to obtain information relating to the communications between Scowcroft, CFIUS and VSNL so that it may determine the nature of the information exchanged in connection with the CFIUS process. *See Krieger v. Fadely*, 199 F.R.D. 10, 13 (D.D.C. 2001) (holding that the nature of the claims asserted define relevancy).

Additionally, the testimony elicited during the deposition may lead to the discovery of admissible evidence as Scowcroft's statements may provide information relating to VSNL and the CFIUS process which was not previously available to Polargrid and may lead to the need for additional discovery from other parties or non-parties. *See Smith v. Schlesinger*, 513 F.2d 462, 473 n.37 (D.C. Cir. 1975) ("[A] party may discovery information which is not admissible at trial if such information will have some probably effect on the organization and presentation of the [requesting party's] case").

Further, although not even required to meet the relevancy standard adopted by this Court, the testimony provided by Scowcroft may contain admissions of a party opponent, *i.e.*, VSNL, which are admissible at trial in accordance with Federal Rule of Evidence 801(d)(2). Fed. R. Evid. 801(d)(2). In this regard, Scowcroft's deposition testimony may reference statements made by VSNL employees regarding Polargrid, the CFIUS process and its commitments under the MOU.

**C.    Scowcroft's Testimony Is Unique In That The Requested
        Information Cannot Be Obtained From Other Sources**

Unable to demonstrate that the information in its possession is identical to that of VSNL,

through a careful (yet, no doubt, intentional) choice of words, Scowcroft argues that the information

requested in the Subpoena is "*presumably* available through discovery from VSNL itself" and that

"*most of the information* sought in the [S]ubpoena is readily obtainable from VSNL." (Scowcroft

Mem., at 5; *Id.* Ex. 2, ¶ 5) (emphasis supplied).  Indeed, Scowcroft's admission as to its own doubts

and uncertainties as to whether VSNL representatives are in possession the requested information

should only heighten this Court's need to deny its motion and compel its compliance with the

Subpoena.

As set forth more fully above, the testimony of a Scowcroft representative is critical to

proving Polargrid's claims alleged against VSNL in the New York Action, as Scowcroft was

intricately involved with VSNL's efforts to obtain the requisite CFIUS approval necessary for

VSNL to acquire Tyco's fiber optic-assets. (Scowcroft Mem., at 2).  Surely, Scowcroft engaged in

interoffice meetings or was privy to other communications relating to the CFIUS process for which

it did not relay every last word to VSNL.  This alone should warrant denial of Scowcroft's motion.

*See Alexander v. FBI*, 186 F.R.D. at 63 (citing *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y.

1984) ("A party is entitled to depose a witness on all relevant issues to which the witness has

knowledge")).

Moreover, the cases cited in support of Scowcroft's untenable position that Polargrid should

seek the requested information from other sources are inapplicable as they each involve situations

where, unlike here, the information was irrelevant to the party's claims, available from a party to the

action or already produced by the subpoenaed party. *See Wyoming*, 208 F.R.D. at 454 (granting

motion to quash where, unlike here, documents were irrelevant to plaintiff's claims and in the

possession of the defendants); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 328

(D.D.C. 1966), *aff'd*, V.E.B. *Carl Zeiss, Jena v. Clark*, 384 F.2d 979 (D.C. Cir. 1967) ("The

claimants' presentation is also devoid of a showing that the papers already furnished [by the

subpoenaed party] have not supplied the great bulk of the information for which the claimants earlier

professed a need . . . [t]here is nothing beyond sheer speculation to even hint that the [requested

information] does not appear or is not discoverable from the mass of data the claimants now

possess"); *Bada Co. v. Montgomery Ward & Co.*, 32 F.R.D. 208, 210 (S.D. Cal. 1963) (granting

motion to modify subpoena where, unlike here, plaintiff was able to obtain the information from the

defendant, but recognizing *"[s]uch failure [in obtaining the documents from the defendant] would,*

*of course, present the Court an altogether different question"*) (emphasis supplied); *Overly v. Hall-*

*Neal Furnace Co.*, 12 F.R.D. 112, 114 (N.D. Ohio 1951) (where, unlike here, requested documents

*were already produced by defendants*, plaintiffs could not obtain identical documents from non-party

without ability to demonstrate that necessary documents were not already produced).

**D.     Polargrid Is Willing To Work With Scowcroft To Schedule**
**A Convenient Time And Place To Conduct The Deposition**

Scowcroft's reliance upon *Wyoming v. United States Dept. of Agriculture*, 208 F.R.D. 449

(D.D.C. 2002) to support its claim that Scowcroft will suffer an undue burden in appearing for a

deposition is misplaced. In *Wyoming*, the plaintiff served non-party witnesses with subpoenas

seeking information *outside the scope of the action* relating to internal and strategic communications

on *irrelevant policy issues* with groups other than the defendant. *Wyoming*, 208 F.R.D. at 454. In

- 11 -

finding that the documents sought in the subpoena were irrelevant to the plaintiff's claims, the Court noted that the requested documents related to claims the plaintiff may have against *other environmental advocacy groups* (*i.e.*, not the defendant), and therefore "fall outside the scope of discovery needed for [the plaintiff] to prove its claim that the *government* violated the [Federal Advisory Committee Act]." *Id.* (emphasis in original).  Unlike the situation in *Wyoming*, the testimony sought from Scowcroft falls within the scope of discovery as it has a direct bearing on *VSNL's* relationship with Polargrid and goes to the heart of *VSNL's* intent to breach the MOU and, therefore, cannot be found unduly burdensome.

Moreover, although claiming that a deposition would "place an unnecessary burden" upon Scowcroft, in the same sentence, its founding member declares that it may only take *one day* to prepare for and complete the deposition. (Scowcroft Mem., Ex. 2, ¶ 5).  While Polargrid does not dispute that the deposition will likely be completed within a few hours, Scowcroft's contention that preparing for and attending a deposition in an eight hour time frame is burdensome is disingenuous, at best.  Indeed, Scowcroft's logic runs contrary to public policy, Federal Rule of Civil Procedure 45 and a party's ability to obtain documents from non-parties to a litigation.

That being said, conscious of Scowcroft's concerns, Polargrid is willing to coordinate a mutually convenient time and place for the deposition with Scowcroft's counsel.[6]  Moreover, to further accommodate Scowcroft, Polargrid is even willing to change the location of the deposition to Scowcroft's own offices.

---

6    As set forth in Point II(B) below, Polargrid is even willing to assume  the costs of copying the  documents responsive to the Subpoena.

**E.    Scowcroft's Claims Of Privilege And
      Confidentiality Are Unsupportable**

Scowcroft's claim that it is somehow immune from disclosing the information requested in

the Federal Court Subpoena by virtue of a confidentiality clause in its retainer agreement with VSNL

is without a sound basis in law. *See F.T.C. v. Dresser Indus., Inc.*, Misc. No. 77-44, 1977 WL 1394,

at *5 (D.D.C. April 26, 1997) (annexed hereto as Exhibit A) ("The mere fact that some of the

subpoenaed material may be confidential does not . . . excuse compliance with [a] subpoena").

Indeed, Federal Courts have found that a party responding to a subpoena cannot refuse compliance

based upon the confidential nature of the requested information. *See Federal Open Mkt. Comm. Of

Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979) ("[T]here is no absolute privilege for . . .

confidential information") (internal quotation marks and citation omitted); *E.E.O.C. v. C&P

Telephone Co.*, 813 F. Supp. 874, 876 (D.D.C. 1993) ("The need for confidentiality is not a valid

basis to refuse to comply with a subpoena"); *Hill v. Dillard's Inc.*, No. 00-2523, 2001 WL 1718367,

at *4 (D.Kan. Oct. 9, 2001) (annexed hereto as Exhibit B) ("Confidentiality does not equate to

privilege . . . [i]nformation is not shielded from discovery on the sole basis that the information is

confidential").

Here, while Scowcroft has made a blanket allegation that the information requested in the

Subpoena is confidential, it has failed to allege a specific privilege attaching to the information.

Moreover, based upon the information provided by Scowcroft regarding its relationship with VSNL,

there is no apparent privilege which would apply.

Further, Scowcroft's sweeping allegations that the requested information is confidential and

subject to a privilege are unsupported by any documentary evidence (redacted or otherwise). *Amicus*

*Communications, L.P. v. Hewlett-Packard Co.*, No. 99-0284, 1999 WL 33117227, at *3 (D.D.C. Dec. 3, 1999) (annexed hereto as Exhibit C) (denying motion to quash subpoena where non-party made sweeping and unsupported conclusion that subpoena sought protected information).  In support of its argument, Scowcroft only submits bare assertions that it should be permitted to avoid responding to the Subpoena by virtue of a confidentiality clause it has placed in the agreements with all of its clients.  Allowing Scowcroft to avoid its obligations under the Subpoena on this basis is contrary to public policy as the relationship between Scowcroft and its clients is not that of attorney-client and is not the subject of any other privilege.  Indeed, were this Court to enforce such a baseless clause, it would encourage other companies to put similar clauses in their agreements, if only to immunize themselves from the subpoena process.

Similarly, Scowcroft's allegations that information relating to the CFIUS process has a "presumption of confidentiality" cannot preclude Scowcroft's deposition as the relevant statutory authority cited by Scowcroft in support of its position contains an exception which permits information submitted to CFIUS to be disclosed in situations, like here, where the requested information is relevant to a judicial action.  50 App. U.S.C. 2170(c).

**F.    Scowcroft Has Failed To Make The Requisite Showing**
**      For This Court To Grant A Stay Of Scowcroft's Deposition**

For a court to stay a proceeding, the requesting party must set forth  a clear case of hardship or inequity.  *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 193 (D.D.C. 2003) (denying nonparty's motion to stay court's obligation to rule on plaintiff's motion to compel compliance with subpoena where nonparty failed to allege how it will suffer harm if court were to resolve issues before it).  Indeed, this Court has taken a rigid stance in enforcing this rule, finding that "[t]he right

to proceed in court should not be denied except under the most extreme circumstances." *Id.* (internal quotation marks and citation omitted).

As set forth more fully above, Scowcroft has failed to demonstrate that it will suffer any hardship or inequity by virtue of this Court's enforcement of the Subpoena. Indeed, the information requested of Scowcroft goes to the heart of Polargrid's claims in the New York Action and Polargrid is willing to make every effort to accommodate Scowcroft's needs in complying with the request.

Additionally, a stay of enforcement of the Subpoena pending the completion of Polargrid's discovery of VSNL will greatly prejudice Polargrid as VSNL has, to date, failed to produce discovery which relate to Scowcroft and the CFIUS process. (Baldwin Decl., ¶ 6). Further, as the documents from VSNL are essential to determining the line of questioning Polargrid intends to pursue with respect to VSNL, Polargrid cannot complete its depositions of all VSNL personnel until the documents are produced.

Moreover, it is imperative that Polargrid proceed in deposing Scowcroft as its deposition testimony will also aid Polargrid in determining the line of questioning it will pursue when it deposes VSNL and in determining what (if any) additional non-party discovery is necessary to substantiate Polargrid's claims in the New York Action. Indeed, as courts often set stringent discovery deadlines which parties must comply with, staying enforcement of the Subpoena pending the completion of discovery from VSNL in the New York Action may inhibit Polargrid's ability to obtain any additional discovery from Scowcroft and other non-parties if discovery of VSNL is delayed due to motion practice.

## POINT II

### SINCE THE DISCOVERY REQUESTED FROM SCOWCROFT IS CRUCIAL TO THE UNDERLYING LITIGATION, THIS COURT SHOULD COMPEL SCOWCROWFT'S PRODUCTION OF THE REQUESTED DOCUMENTS AND ITS APPEARANCE AT A DEPOSITION

Based upon the same logic as set forth above, this Court should enforce the Subpoena and compel Scowcroft's compliance with Exhibit B to the Subpoena, which seeks the production of documents. (Scowcroft Mem., Ex. 3). Indeed, Scowcroft's objections to the production of the requested documents, as set forth in the June 7 Letter, are without a sound basis in law. (Baldwin Decl., Ex. C).

### A.    Scowcroft Has Waived Its Right To Assert Any Claim Of Privilege By Failing To Comply With The Requirements Set Forth In The Federal Rules

As set more fully above in Point I(E) above, Scowcroft's specious allegations that its communications with VSNL and CFIUS regarding the CFIUS process are privileged do not preclude the production of the information requested in the Subpoena.

Similarly, Scowcroft's hollow assertion that "any documents in [its] possession reflecting its work for VSNL are confidential and privileged from disclosure" (Baldwin Decl., Ex. C) fails to meet the stringent standard set forth in Federal Rule of Civil Procedure 45(d)(2), as these allegations are not supported by a privilege log or a description of the documents which it is refusing to produce.

*GFL Advantage Fund, Ltd.*, 216 F.R.D. at 195 ("The apparent inapplicability of the privilege on its face increases, rather than decreases, the need for a privilege log"); *Alexander v. FBI*, 186 F.R.D. 21, 38 (D.C. Cir. 1998) ("[A]n individual served with a subpoena duces tecum has an obligation to conduct a reasonable search to ensure that non-privileged documents that are relevant or likely to lead to the discovery of admissible evidence are produced").

Indeed, this Court has taken a rigid stance in enforcing this Rule, finding that:

> *Before a court turns to the question of privilege, the subpoenaed party must comply with the requirements of Fed. R. Civ. P. 45(d)(2)* which provides: "When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, *the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications or things not produced that is sufficient to enable the demanding party to contest the claim.*"
>
> *The rule is obviously mandatory. Failure to comply with it "is deemed to waive the underlying privilege claim."*

*GFL Advantage Fund, Ltd.*, 216 F.R.D. at 195 (emphasis supplied and citation omitted).

As such, even if Scowcroft has a valid privilege claim (which it does not), any such claim was waived by its failure to comply with the requirements of Rule 45(d)(2).

**B.    Production Of The Documents Requested In
       The Subpoena Will Not Unduly Burden Scowcroft**

For reasons similar to those set forth in Point I(B) above, the documents requested from Scowcroft in Exhibit B of the Subpoena are relevant to this litigation as the communications between Scowcroft and CFIUS and/or Scowcroft and VSNL go to the essence of Polargrid's claims in the New York Action; namely that VSNL never intended to honor its obligations to Polargrid under the MOU. As such, these documents are necessary to establish the facts set forth in the New York Action Complaint and VSNL's bad faith efforts to frustrate Polargrid's rights under the MOU.

Moreover, it is irrelevant that some of the documents Polargrid requested from Scowcroft may overlap those previously requested from VSNL, as VSNL has refused production of these documents. (Baldwin Decl., ¶ 6). Further, while some of the information requested of Scowcroft and VSNL may be similar in nature, this does not mean that the documents produced in response to

the requests will be the same.   Indeed, even if VSNL were to produce the documents requested in

Polargrid's Document Request (which it had not), Scowcroft is likely to be in possession of

additional documents which are not in VSNL's control.  (Scowcroft Mem., at 2; *Id.* Ex. 2, at ¶ 5).

Indeed, while documents such as computer printouts, e-mails, handwritten and/or office notes,

telephone logs, internal memoranda and other documentation are not always provided to clients in

connection with a client relationship (and can often only be obtained from the source), such

information is responsive to Polargrid's Subpoena and subject to production as these documents

likely contain information necessary to prove Polargrid's claims. *See United States ex. rel Fisher v.*

*Network Software Assocs.*, 217 F.R.D. 240, 246 (D.D.C. 2003) (recognizing the need to balance any

burden allegedly suffered by the producing party against the need for the requested discovery).

Finally, Scowcroft cannot claim that it will suffer an undue burden in connection with

copying the requested documents as Polargrid is willing to cover any reasonable copying costs.

Indeed, in determining whether a subpoenaed party will suffer an undue burden in producing

documents, this Court looks at the resources of the subpoenaed party and which party can more

readily bear the costs associated with production. *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C.

1992) . Here, in an effort to avoid this inquiry and any expense on the part of Scowcroft, Polargrid is

willing to pay the reasonable costs associated with photocopying the documents.   Indeed, in

accordance with the well-settled rule of this Court, Polargrid's willingness to assume the costs of

production, precludes any claim of undue burden by Scowcroft:

> [I]t is impossible to consider issues of "undue burden or
> expense" in the abstract, divorced from the question of
> which party will bear that burden and expense.  If *the Court*
> *were to decide that the [party moving to compel] must bear*

*all costs, then [the subpoenaed party] would have no basis*
*for objections based on burden or expense to it.*

*In re Exxon Valdez*, 142 F.R.D. at 383 (emphasis supplied and citation omitted).

## CONCLUSION

For the foregoing reasons, it is respectfully requested that Scowcroft's motion to quash the

Subpoena be denied and that Scowcroft be forced to comply with the Subpoena in its entirety.

*Polargrid joins in Scowcroft's request for oral argument on Scowcroft's motion.*

Dated: Washington, D.C.
June 24, 2005

BUCHANAN INGERSOLL PC

By:_____
          John H. Korns, Esq. (D.C. Bar No. 142745)

1776 K Street, N.W.
Suite 800
Washington, D.C.  20006-2365
Telephone: (202) 452-7939
Facsimile: (202) 452-7989

Attorneys for Plaintiff
Polargrid LLC

Of Counsel:
Mark S. Baldwin, Esq. (not a member of the D.C. Bar)
Peter D. Adelman, Esq. (not a member of the D.C. Bar)
Brown Rudnick Berlack Israels LLP
Seven Times Square
New York, New York, 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

#8110732