# EXHIBIT A

Westlaw.

Not Reported in F.Supp. Page 1

1977 WL 1394 (D.D.C.), 1977-1 Trade Cases P 61,400

(Cite as: 1977 WL 1394 (D.D.C.))

H

United States District Court, District of Columbia.
**Federal Trade Commission (on relation of Kaiser Aluminum & Chemical Corp.)**
v.
Dresser Industries, Inc.
Misc. No. 77-44

Filed April 26, 1977

FLANNERY, D. J.

**Memorandum Opinion**
*1 This is an action brought by the Federal Trade Commission on petition for enforcement of a subpoena. The subpoena was issued pursuant to the Commission's authority under Section 9 of the Federal Trade Commission Act, 15 U. S. C. § 49, which provides that "the Commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation." The subpoena originated in an adjudicatory proceeding currently pending before the Commission in which Kaiser Aluminum and Chemical Corporation is alleged to have violated Section 7 of the Clayton Act, 15 U. S. C. § 18, and Section 5 of the Federal Trade Commission Act, 15 U. S. C. § 45, by its acquisition of the Lavino Division of International Minerals and Chemical Corporation. The acquired division is a major producer of basic refractories, which are non-metallic insulating materials. Although Kaiser raised a number of defenses, those defenses generally contended that the acquired division had ceased to be a significant competitor in the industry and that the acquisition actually increased competition in the relevant markets.

*[Third-Party Witnesses]*
In order to obtain the information necessary for its defense, Kaiser applied to the Commission's Administrative Law Judge for issuance of subpoenas *duces tecum* to other manufacturers of basic refractories. Sixteen subpoenas, directed to smaller manufacturers, contained only six specifications. Fourteen other subpoenas were more complex and contained 22 specifications. The more elaborate subpoenas were directed to the leading manufacturers of the product. One company, respondent Dresser Industries, Inc., was directed to answer a twenty-third specification concerning a major raw materials supply contract between Dresser and Lavino. Several of the subpoenaed companies moved to quash the subpoenas, and in a thorough and carefully reasoned Order of November 12, 1976, the Administrative Law Judge denied the motions to quash but did modify 13 of the 22 specifications in order to lessen the burden of compliance. Appeals from this Order were denied by the Commission, which found that the Administrative Law Judge had not abused his discretion in upholding the subpoenas. Subsequent to that decision by the Commission on December 16, 1976, four companies continued to refuse to comply with the subpoenas. The Commission, through its General Counsel, then initiated the instant petition for enforcement in the district court. As of the hearing of this matter on April 7, 1977, only Dresser remained in noncompliance, the other companies having elected to obey the subpoenas.

At the April 7 hearing, two of the pending motions were decided from the bench. First, the court denied Dresser's motion to stay the proceedings or, in the alternative, to transfer them to the Northern District of Texas, where Dresser had earlier filed an action for declaratory relief from the subpoena. Second, the court granted Kaiser's motion to intervene pursuant to Rule 24(a) of the *Federal Rules of Civil Procedure*. Argument was then heard on the remaining matters: (1) the motion by Dresser for civil discovery and (2) Dresser's opposition to the petition for subpoena enforcement. With respect to its motion for civil

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
1977 WL 1394 (D.D.C.), 1977-1 Trade Cases P 61,400
(Cite as: 1977 WL 1394 (D.D.C.))

discovery, Dresser contends that the circumstances presented here require the granting of such discovery to enable it to probe the motives of Kaiser and the Commission. In its opposition to the subpoena, Dresser argues that the subpoena fails to meet the standards of relevance prescribed by the Commission's rules, that compliance with the subpoena would be too burdensome, and that the subpoenaed material would not be adequately safeguarded from disclosure of confidential information. Dresser further urges that, if the subpoena is found to be valid and enforceable, the court issue a protective order designed to prevent dissemination of this confidential material.

[*Nature of Enforcement Proceeding*]
*2 At the outset, certain basic principles should be stated which must guide the court in its consideration of the issues. In an enforcement proceeding of this sort, the court's role is "a strictly limited one," and "the scope of issues which may be litigated in an enforcement proceeding must be narrow, because of the important governmental interest in the expeditious investigation of possible unlawful activity." *Federal Trade Commission v. Texaco, Inc.*, No. 74-1547 (D. C. Cir. Feb. 23, 1977), slip opinion at 16, 18. In the usual case such matters will be summary in nature in order to facilitate the rapid resolution of issues which may significantly bear upon the agency's law enforcement responsibilities.

Despite the specific ruling of Judge Parker in the Order to Show Cause of March 4, 1977, Dresser insists, contrary to that Order, that this is not a summary proceeding. At least in this circuit, subpoena enforcement proceedings are considered to be summary in nature unless there appears some compelling reason for a fuller procedure. See *Federal Trade Commission v. Texaco, Inc., supra* at 39 n. 48; *Federal Trade Commission v. Sherry*, 1969 TRADE CASES. P 72,906 (D. D. C. 1969). See also *In Re FTC Corporate Patterns Report Litigation* [1977-1 TRADE CASES P 61,312], - F. Supp. -, Misc. No. 76-126 (D. D. C. Jan. 31, 1977). Even Rule 81(a)(3) of the *Federal Rules of Civil Procedure*, upon which Dresser relies for its claim of a right to civil discovery, provides:

These rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States *except as otherwise provided* by statute or by rules of the district court or *by order of the court in the proceedings.*
(Emphasis added.) Here the Order to Show Cause clearly specified that the proceeding was to be summary with no discovery for any party in the absence of further order by the court.

[*Availability of Discovery*]
In a proceeding such as this, discovery is available only upon a strong showing of need. The areas in which Dresser requests discovery and which it alleges to be central to its opposition to the subpoena are as follows: (1) the possibility that Kaiser's motive in requesting the subpoenas was only to delay the adjudicative proceeding against it; (2) the fact that Kaiser has settled with other parties subpoenaed but not with Dresser; (3) the Commission's alleged abuse of its subpoena power; (4) the Commission's alleged failure to protect Dresser's rights as a non-party to the adjudicative proceeding; and (5) the Commission's alleged failure to follow its own rules in the issuance of the subpoena. Some of these issues appear to require no discovery as they involve purely legal issues, such as whether the Commission has in fact failed to follow its rules of procedure. Others appear not to be genuine issues at all. For example, counsel for Kaiser revealed at the hearing that Dresser had been offered essentially the same terms for compliance with the subpoena as the other companies, but that Dresser had refused those terms while the other companies had accepted them. In light of that fact, which was not contradicted by Dresser, it is difficult to see how Dresser can allege that the other companies were the beneficiaries of a favorable or preferential settlement.

*3 This case features none of the egregious circumstances found in a case like *United States v. Wright Motor Co.*, 536 F. 2d 1090 (5th Cir. 1976). Nor does it appear that Dresser has been subjected to a "sweeping or irrelevant" subpoena request, as in *United States v. Theodore*, 479 F. 2d 749, 754

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1977 WL 1394 (D.D.C.), 1977-1 Trade Cases P 61,400
(Cite as: 1977 WL 1394 (D.D.C.))

Page 3

(4th Cir. 1973), where the particular summons involved was described by the court as "unprecedented in its breadth." Most importantly, Dresser has alleged no specific facts to support its claim of bad faith on the part of Kaiser and the Commission. Some such specific factual allegations are necessary before the court will abrogate the usual rule that discovery is not allowed in summary proceedings. See *United States v. Fensterwald*, No. 76-1290 (D. C. Cir. Mar. 8, 1977). In the absence of these allegations and of any indication of bad faith or improper motive on the part of Kaiser or the Commission, the court must refuse Dresser's request for civil discovery.

The mere fact that Dresser is not a party to the pending adjudicative proceeding does not alter the basic principle that discovery rights are inconsistent with the summary nature of subpoena enforcement. See *Federal Trade Commission v. United States Pipe and Foundry Co.* [1969 TRADE CASES P 72,947], 304 F. Supp. 1254 (D. D. C. 1969). Any other result might seriously threaten the Commission's investigative powers, as well as prejudice the rights of parties such as Kaiser who are engaged in litigation with the Commission.

[Scope of Subpoena]
In opposing the subpoena on the merits, Dresser is confronted with a task at least as difficult as overcoming the presumption against discovery in summary enforcement proceedings. The basic standard for challenges to agency subpoena power is set forth in *United States v. Morton Salt Co.* [1950-1951 TRADE CASES P 62,561], 338 U. S. 632, 652 (1950), where the Supreme Court said:

[I]t is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.

In view of this standard and the "strictly limited" role of the court, see *Federal Trade Commission v. Texaco, Inc., supra* at 16, one who opposes an agency's subpoena necessarily must bear a heavy burden. That burden is essentially the same even if the subpoena is directed to a third party not involved in the adjudicative or other proceedings out of which the subpoena arose. *Federal Trade Commission v. Tuttle* [1957 TRADE CASES P 68,669], 244 F. 2d 605 (2d Cir. 1957), cert. denied, 354 U. S. 925; *Federal Trade Commission v. Bowman* [1957 TRADE CASES P 68,647], 149 F. Supp. 624 (N. D. Ill.), aff'd [1957 TRADE CASES P 68,832], 248 F. 2d 456 (7th Cir. 1957); *Federal Trade Commission v. United States Pipe and Foundry Co., supra.*

Dresser does not contend that the subpoena is beyond the statutory authority of the Commission, but instead focuses upon the other two elements discussed in *Morton Salt, supra.* Specifically, Dresser asserts that the subpoena violates the Commission's own standards of relevance and that the subpoena is so indefinite and sweeps so broadly that Dresser is unduly burdened. In the relevance inquiry, the court must be satisfied merely that the material sought is "reasonably relevant"; there need be no showing that the subpoenaed material is clearly or unquestionably relevant or, as Dresser contends, "relevant and necessary." *Federal Trade Commission v. Texaco, Inc., supra* at 20-21 n. 23.

[Relevance]
*4 Dresser's arguments concerning relevance revolve primarily about the Commission's rule for the issuance of subpoenas *duces tecum.* 16 C. F. R. § 3.34(b) (1976). That rule provides, in pertinent part:

(1) Application for issuance of a subpoena requiring a person to appear and depose or testify and to produce specified documents, papers, books, or other physical exhibits at the taking of a deposition, or at a prehearing conference, or at an adjudicative hearing shall be made in writing to the administrative law judge, and shall specify as exactly as possible the material to be produced, showing the general relevancy of the material and the reasonableness of the scope of the subpoena. . . .

(2) Subpoenas *duces tecum* may be used by any party for purposes of discovery or for obtaining documents, papers, books or other physical exhibits for use in evidence, or for both purposes.

When used for discovery purposes, a subpoena may require a person to produce and permit the inspection and copying of nonprivileged documents, papers, books, or other physical

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-mc-00219-EGS    Document 4-2    Filed 06/24/2005    Page 5 of 6

Not Reported in F.Supp.                                                                                                      Page 4
1977 WL 1394 (D.D.C.), 1977-1 Trade Cases P 61,400
(Cite as: 1977 WL 1394 (D.D.C.))

exhibits which constitute or contain evidence relevant to the subject matter involved and which are in the possession, custody, or control of such person.

Dresser apparently views the language of "constitute or contain evidence" found in § 3.34(b)(2) as requiring a determination, prior to issuance of a subpoena, that subpoenaed material would be admissible in evidence. Such an interpretation is clearly inconsistent with the statement in the same rule to the effect that "[s]ubpoenas *duces tecum* may be used by any party for purposes of discovery or for obtaining documents, papers, books or other physical exhibits for use in evidence, or for both purposes." Furthermore, it is inconsistent with the Commission's own longstanding interpretation of § 3.34(b)(2), which is that it only requires a general showing of relevance. In the absence of a clear error, the Commission's reading of its own regulation is entitled to great deference from this court. See *Udall v. Tallman*, 380 U.S. 1, 16 (1965). If Dresser's view of the rule were adopted by the court, the use of a subpoena *duces tecum*, at least for purposes of discovery, would be completely undermined.

Dresser also alleges that the application for issuance of a subpoena *duces tecum* was insufficient in that it failed to make a strong showing of relevance and need. As noted above, such is not the correct standard. Instead, the applicant for a subpoena need only show that the materials sought are generally or reasonably relevant. Even if there were some inadequacy in the application-and the court does not believe that there was in this instance-Dresser would not have been prejudiced by it for the administrative law judge made a specification-by-specification finding of relevancy. In the process, he limited the scope of some of the specifications where he deemed it appropriate. The court has examined the complaint, the defenses raised by Kaiser, the specifications found in the subpoena, and the findings of the administrative law judge with reference to each of the specifications, and must conclude that the documents and other material subpoenaed meet the standard of "reasonable relevance" and that the administrative law judge did not abuse his discretion in upholding the specifications, as modified by his order.

*[Burden of Compliance]*

*5 In opposing the subpoena on the ground that it imposes too great a burden, Dresser again faces a very difficult task. The court of appeals for this circuit recently defined the showing of burden that would be necessary in order successfully to oppose an agency subpoena:

> We emphasize that the question is whether the demand is *unduly* burdensome or *unreasonably* broad. Some burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest. The burden of showing that the request is unreasonable is on the subpoenaed party.
> Further, that burden is not easily met where, as here, the agency inquiry is pursuant to a lawful purpose and the requested documents are relevant to that purpose. Broadness alone is not sufficient justification to refuse enforcement of a subpoena.
> Thus courts have refused to modify investigative subpoenas unless compliance threatens to unduly disrupt or seriously hinder normal operations of a business.

*Federal Trade Commission v. Texaco, Inc., supra* at 39-40.

Based on an uncontradicted affidavit, Dresser claims that the cost of compliance with the subpoena would be $400,000. Even if the affidavit were totally convincing in the statistics which it presents, this would not necessarily satisfy Dresser's burden. Dresser must show that compliance with the subpoena would "unduly disrupt or seriously threaten normal operations." This Dresser has not done. As the court of appeals observed in *Federal Trade Commission v. Texaco, Inc., supra* at 40, it is not insignificant that other companies were willing and able to comply with similar subpoenas without undue effort. Here all the other companies which were subpoenaed, including those with subpoenas virtually identical to that of Dresser, have agreed to comply, a fact which strains the credibility of Dresser's claim of unreasonable burden. It may

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5
1977 WL 1394 (D.D.C.), 1977-1 Trade Cases P 61,400
(Cite as: 1977 WL 1394 (D.D.C.))

very well be that Dresser's burden is greater than that of the other subpoenaed companies, but that is to be expected from the fact that Dresser is the dominant firm in the industry with by far the largest volume of sales. Indeed, it is Dresser's dominance in the industry which makes the subpoena served upon it critical to Kaiser's defense. Thus, as the record now stands, the court must find that the burden imposed by the subpoena is not an unreasonable one so as to warrant quashing or further limiting the subpoena. Furthermore, though the subpoena is admittedly a sweeping one, it is not illegal or overbroad, for the breadth of the request is dictated by the scope of the adjudicative proceeding.

[*Protective Order*]
Finally, Dresser urges that the subpoena not be enforced because inadequate protection is afforded for vital trade secrets and other confidential information. The mere fact that some of the subpoenaed material may be confidential does not, however, excuse compliance with the subpoena. *Federal Trade Commission v. Lonning* [1976-1 TRADE CASES P 60,942], 539 F. 2d 202, 211 (D. C. Cir. 1976); *Federal Trade Commission v. Tuttle* [1957 TRADE CASES P 68,669], 244 F. 2d 605, 616 (2d Cir. 1957), cert. denied, 354 U. S. 925. The administrative law judge has entered a comprehensive protective order which should be sufficient to safeguard the confidentiality of Dresser's secrets. Dresser's primary fear appears to be that the protective order does not bind the Commission itself. It is not clear that Dresser's fear is wellfounded in this regard, but in any event there are other barriers to dissemination by the Commission. First, such material is exempt from disclosure requirements under the Freedom of Information Act. 5 U. S. C. § 552(b)(4). Second, 15 U. S. C. § 46(f) bars the Commission from making public trade secrets and other confidential information such as the names of customers. And the court cannot lightly assume that the Commission will fail to discharge diligently and in good faith its responsibilities under the law. Under the circumstances, a protective order by this court would be neither necessary nor appropriate.

*6 The court believes that the subpoena, as modified by order of the administrative law judge, should be enforced, and an appropriate order to that effect accompanies this memorandum opinion.
The court is not unmindful of the tremendous impact which compliance with such subpoenas can have upon companies which appear to be innocent bystanders. The cost of effective economic regulation, however, is one which must be shared by all industry, indeed by the entire society. The expeditious enforcement of such subpoenas, usually without the civil discovery and the protective order which were requested of the court in this case, is an integral part of the regulatory scheme, and only in the most egregious of circumstances should a court intervene to delay or hinder the enforcement process.

1977 WL 1394 (D.D.C.), 1977-1 Trade Cases P 61,400

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.